UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAYLA A. BENNING,

    Plaintiff,

                                        Case No.:

v.

FLORIDA DEPARTMENT OF
JUVENILE JUSTICE,

    Defendant,
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Kayla A. Benning ("Plaintiff"), sues the Defendant, Florida Department of Juvenile Justice ("Defendant"), and alleges as follows:

1. This is an action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e)-(2) and §2000(e)-(3)(a), as amended by the Civil Rights Act of 1991("Title VII"). The jurisdiction of this Court is founded upon 28 U.S.C. §1343 and 42 U.S.C. §2000(e)-5(f)(3).

2. Plaintiff, Kayla A. Benning, is a female who resides in Pinellas County, Florida. She was employed by the Defendant in Clearwater, Pinellas County, Florida.

3. The Defendant, Florida Department of Juvenile Justice, does business in Florida and exists under the laws of Florida. It operates a place of business in Clearwater, Pinellas County, Florida.

4. Venue is proper in this Court in that the discriminatory and retaliatory activities as alleged herein occurred in Pinellas County, Florida.

## General Allegations

5. On September 19, 2020, Plaintiff began her employment as a Detention Officer at the Pinellas Regional Juvenile Detention Center in Clearwater, Florida.

6. Major Allen, a manager, subjected Plaintiff and other women who worked at the facility to sexual harassment. Examples of the sexual harassment are as follows:

7. On September 27, 2019, Major Allen instructed Plaintiff to go with him to the Brevard County detention center in Cocoa Beach, Florida. Major Allen asked Plaintiff to stand up and spin around. Plaintiff asked why? Major Allen said that he "wanted to see what she looked like."

8. Later that day Major Allen told Plaintiff and another new hire that he would give them a tour of the facility. Major Allen asked Plaintiff questions such as "are you are mixed?" He said "because you have all these long curly hair, green eyes, and freckles." Plaintiff was told by the other new hire that Major Allen was staring at Plaintiff's rear end.

9. On Friday, October 4, 2019 in the training center, Major Allen discussed tattoos. He asked Plaintiff "Do you have any on your lower back so when you're getting hit from the back they can aim and shoot right there?" Plaintiff said "excuse me!" Major Allen asked "what did I say that was wrong?" Plaintiff and others who were present told Major Allen that his comments were inappropriate."

10. One day while walking to the maintenance shed, Major Allen said he was late to work "because he was getting p---y."

11. Major Allen repeatedly rubbed and grabbed Plaintiff's neck and back. This physical contact was unwelcome. She was forced to push him away on several occasions.

12. On Friday October 18, 2019, Plaintiff was at work when Major Allen came up and said "I hope you not going into the facility like that, all I see is ass and titties." Major Allen was told by Plaintiff to stop making such comments. Plaintiff was nervous and uncomfortable.

13. On Tuesday, October 15, 2019, Plaintiff needed to pick up her paycheck from Major Allen. Major Allen repeated that "all he saw was ass and titties."

14. On October 25, 2019, Major Allen walked up to Plaintiff and asked if he could see her any pictures on her phone. Plaintiff refused. He said "you wouldn't know what to do with old man dick."

15. Major Allen was told by Plaintiff that the comment was disgusting, unwanted and that he needed to stop immediately. Because Major Allen did not stop sexually harassing Plaintiff, She reported the sexual harassment.

16. In December of 2019, Plaintiff told her trainer and supervisor, Mrs. Freda Isom, that Major Allen was sexually harassing her. Mrs. Isom, who had been employed for 14 years, had been sexually harassed herself by Major Allen. Mrs. Isom and Plaintiff discussed Major Allen's sexual harassment.

17. Mrs. Isom went to administration to report the sexual harassment of Plaintiff. Mrs. Isom informed Major Allen and Captain Bridges that one of her female subordinates had been sexually harassed by Major Allen. A few days later, Chief Owen asked Mrs. Isom for a written statement. Mrs. Isom heard Captain Bridges suggest she would be demoted.

18. After Mrs. Isom reported Major Allen for sexual harassment, Major Allen came up to Plaintiff and said "I know it's that bitch that said something." Plaintiff became terrified that she would lose her job.

19. Plaintiff was asked whether Major Allen had sexually harassed her. Because she was intimidated and scared of being terminated based upon what Major Allen said about Mrs. Isom, she signed a statement that she did not want to make a complaint of sexual harassment.

20. Major Allen continued to sexually harass Plaintiff. He combined his sexual harassment with hostility and exclusion.

21. Mrs. Isom was targeted by Major Allen and Captain Bridges. On January 14, 2020, she was demoted.

22. Because of the hostility directed towards her, on February 5, 2020, Plaintiff obtained the EEO phone number. She contacted Aldrin Sanders an internal EEO person for Department of Juvenile Justice. The next day Chief Owens and Director Gray interviewed Plaintiff. Plaintiff told them how Major Allen had sexually harassed her.

23. Plaintiff told Chief Owens and Director Gray that she was very nervous and did not want to lose her job.

24. After Plaintiff's formal report, she was treated differently. Male officers were told not to speak to Plaintiff "because she will get you cased-up." This was a recurring comment. Because Plaintiff told Chief Owens and Director Gray about the sexual harassment and was now being excluded, joked about and treated differently, she decided not to file a formal written complaint with the EEO in Tallahassee.

25. Captain Bridges, who used to be friendly and engaging towards Plaintiff, ignored her, and on other occasions gave her threatening looks. Captain Bridges excluded Plaintiff, treated her differently than before her report of sexual harassment, and was hostile and dismissive towards Plaintiff. He and Major Allen stared at Plaintiff in an angry or sarcastic

manner and shook their heads. Plaintiff was fearful and nervous due the treatment as an outcaste and perceived troublemaker.

26. Plaintiff's male co-workers were told not to speak to her. Just before Plaintiff was fired, Major Allen stared at her, and looked her up and down in a sexually suggestive manner and made a "yummy" sound.

27. On June 30, 2020, Plaintiff was assigned to B2(Bravo Mod) with officers Zeiger and Nicholson. Plaintiff was asked to take the youth into the apex classroom. Supervisors Jenkins and Martin brought the youth dinner trays. Around 5:40 p.m. Zeiger asked the youth to go downstairs. The youth were upset that they did not get any recreation time and refused. CPl Nicholson came into the classroom and told them to go downstairs. They refused. He said he was going to call a Code Blue.

28. Nicholson called Code Blue. Plaintiff was locked in the classroom with the youth. She was let out and stood in the doorway. The youth took off their shirts, pants, and socks. Nicholson grabbed a youth and wrestled. While on the ground, Plaintiff observed the officer's emotions getting the best of him. The youth's mouth was bleeding. Plaintiff tapped CPL Nicholson off the youth. She got down on the ground and talked to the youth. She told him to calm down. He finally did. Officer Zeiger was on the ground the whole time with the youth and escorted him to his room.

29. On July 3, 2020, Plaintiff was told to go to Captain Bridges' office. Captain Bridges told Plaintiff that she was fired because "the Code Blue got out of hand." Bridges was angry and told Plaintiff he could fire her for anything since she was a probationary employee. He then winked and said "the EEO cannot help you now." This was an obvious reference to her EEO Complaint of Sexual Harassment against Major Allen.

30. Officer Zeiger, who started almost a month after Plaintiff, was involved in the Code Blue, but not fired. No disciplinary actions were bought against anyone involved in the Code Blue other than Plaintiff.

31. On September 9, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's charge was automatically dual-filed with the Florida Commission on Human Relations ("FCHR") On April 19, 2021, the EEOC issued a Notice of Right to Sue Letter. This action has been timely commenced under Title VII.

## COUNT I- RETALIATION

32. Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 31 above.

33. The Defendant was an "employer" of Plaintiff as defined by the Title VII.

34. At all times material to this action, there has been in full force and effect a provision of Title VII, that prohibits discriminatory and retaliatory employment practices against employees because they have opposed unlawful employment practices and have complained of such unlawful practices.

35. Plaintiff complained to her supervisor, Defendant's management and the EEO about conduct that constituted sexual harassment. Accordingly, Plaintiff engaged in protected opposition conduct and was protected against retaliation under the applicable civil rights statutes.

36. Plaintiff complained about unlawful harassment of a sexual nature. In response, action was not taken to immediately stop the sexual harassment. Plaintiff was intimidated and shunned. Her supervisor was demoted and she was terminated.

37. As a result of the unlawful employment practices complained of above, Plaintiff has been deprived of equal employment opportunity, has suffered emotional pain and suffering, inconvenience, mental anguish and other harms and losses.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant for including, but not limited to, lost wages, benefits and other compensation in the past and future, together with prejudgment interest on the outstanding obligation, and/or reinstatement, together with all other compensatory damages, including but not limited to damages for emotional distress and harm, and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under Title VII.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL COUNTS**

_/s/ Ronald W. Fraley_
Ronald W. Fraley
Florida Bar No. 0747025
The Fraley Firm, P.A.
412 East Madison Street, Suite 1213
Email: rfraley@fraleylawfirm.com
Tampa, Florida 33609
Telephone: 813-229-8300
Attorney for Plaintiff